


ENTERED
04/06/2017

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **IRA CHARLES GAMBLE II, *et al*** | § | **CASE NO: 16-36498** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 13** |

**MEMORANDUM OPINION**

Ira and Crystal Gamble jointly filed for chapter 13 bankruptcy in order to obtain relief from their creditors. The Chapter 13 Trustee moved to dismiss the Gambles' bankruptcy petition because of payments due pursuant to 11 U.S.C. § 1326(a)(1), their failure to appear at their 11 U.S.C. § 341 Meeting of Creditors, and their ineligibility for chapter 13 relief under 11 U.S.C. § 109(e). The Trustee's motion to dismiss is granted.

**Background**

Mr. and Mrs. Gamble are married and live in Fresno, Texas. (ECF No. 1 at 2). The Gambles previously filed three bankruptcy cases in the Southern District of Texas and one case in the Eastern District of Wisconsin. (Case Nos. 13-32274, 12-38994, 11-34759, & 99-23197). Three of the Gambles' prior bankruptcy cases were filed within the last 8 years. (Case Nos. 13-32274, 12-38994, 11-34759). None of the Gambles' previous bankruptcy cases are currently pending. (ECF No. 1 at 3).

On December 22, 2016, the Gambles filed a joint and voluntary chapter 13 bankruptcy petition in the Southern District of Texas. (Case No. 16-36498; ECF No. 1). The Gambles' chapter 13 plan, filed on February 6, 2017, proposed to pay $180,000.00 to the Trustee over 60 months. (ECF No. 20 at 1). The Gambles filed two amended plans and ultimately proposed to pay a total of $182,420.00 to the Trustee over 60 months. (ECF No. 42 at 1).

The Trustee filed a motion to dismiss or convert the Gambles' bankruptcy case on February 14, 2017. (ECF No. 26). The Trustee asserted that the Court should dismiss or convert the Gambles' chapter 13 petition because the Gambles (i) failed to make payments under their proposed chapter 13 plan as required by 11 U.S.C. § 1326(a)(1); (ii) failed to appear at their 11 U.S.C. § 341 Meeting of Creditors, constituting a failure to appear in proper prosecution of the case; and (iii) are ineligible for chapter 13 relief under 11 U.S.C. § 109(e) because the amount of their unsecured debt exceeds statutory limits. The Trustee additionally alleges that the Gambles failed to provide a copy of their 2015 income tax return to the Trustee, and failed to submit a proposed employer wage order. (ECF No. 26 at 1).

On March 6, 2017, the Gambles filed a response to the Trustee's motion to dismiss. (ECF No. 37). In their response, the Gambles argued that: they paid a substantial portion of their January 2017 plan payment to the Trustee and are preparing to make their February 2017 payment; Mr. Gamble appeared at the Meeting of Creditors while Mrs. Gamble was unable to appear because of her work; they provided the Trustee with a copy of their 2015 federal income tax return; they will submit either an EFT or an employer wage order; and they are eligible for chapter 13 bankruptcy relief because 11 U.S.C. § 502(b)(6) reduces their unsecured debt below the statutory limits of Section 109(e). (ECF No. 37 at 1–2).

On March 21, 2017, the Court held a hearing on confirmation of the Gambles' chapter 13 plan. At that hearing, the Court took the issue of the Gambles' chapter 13 eligibility under advisement. During the March 21, 2017 hearing, the Chapter 13 Trustee announced that he was not pursuing his eligibility objection. Nevertheless, the Court has an independent duty to assure that an individual is eligible for Chapter 13 relief. *See, e.g.*, *In re Silva*, 2011 WL 5593040, at *1 (Bankr. N.D. Cal. Nov. 16, 2011) ("Pursuant to the court's independent obligation to determine

whether plan confirmation is appropriate, the court questioned the debtors' Chapter 13 eligibility under Bankruptcy Code § 109(e) and their good faith in proposing the Plan.").

**Jurisdiction**

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court has constitutional authority to enter a final order in this adversary proceeding.

**Analysis**

11 U.S.C. § 109(e) governs who qualifies as a chapter 13 debtor under the Bankruptcy Code. Section 109(e) states:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

The Gambles' schedules indicate that the couples' unsecured debts total $517,762.46. (ECF No. 37 at 1; ECF No. 17 at 24–44). This amount of total unsecured debt exceeds the limit of $394,725.00 for noncontingent, liquidated, unsecured debts allowed for chapter 13 eligibility as set forth in Section 109(e).

However, the Gambles assert that 11 U.S.C. § 502(b)(6) limits their amount of unsecured debt and thus brings them within the parameters of Section 109(e). Under Section 502(b)(6), if a party in interest objects to a claim:

> the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . (6) if such

> claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--(i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates . . . .

11 U.S.C. § 502(b)(6).

Jung H. Kwak's unsecured claim of $306,135.00 resulted from the termination of a lease of real property. (ECF No. 37 at 2). The Gambles entered into a lease with Mr. Kwak on or about April 22, 2014. (ECF No. 37 at 2). The lease term was set to run from August 1, 2014, to July 31, 2019; however, the Gambles vacated the premises on October 26, 2014. (ECF No. 37 at 2). Mr. Kwak filed a lawsuit against the Gambles and obtained a judgment for the unpaid rent over the life of the lease. (ECF No. 37 at 2). Mr. Kwak's judgment for unpaid rent subsequently became an unsecured claim in the Gambles' bankruptcy.

Based on Section 502(b)(6), the Gambles argue that Mr. Kwak's unsecured claim should be limited to the greater of one year of rent after the Gambles vacated the leased premises or 15% of the remaining lease term. (ECFF No. 37 at 2). The rent for the year after the Gambles vacated the leased premises was projected to be $62,250.00. (ECFF No. 37 at 2). In contrast, 15% of the remaining lease payments total $45,620.25. (ECFF No. 37 at 2). Accordingly, the Gambles contend that Mr. Kwak's unsecured claim should be limited to one year of rent under the 2014 lease agreement. (ECFF No. 37 at 2). This asserted limit on Mr. Kwak's claim would reduce the ultimate amount of the Gambles' unsecured debt to $273,877.46, well within the eligibility limits in Section 109(e). (ECF No. 37 at 2).

The issue before the Court is whether a creditor's claim that exists on the petition date should be excluded from consideration because of the possibility that the statutory limit under Section 502(b)(6) will eventually cap that claim. The text of Section 109(e) is clear and

unambiguous: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725" is eligible to file for chapter 13 bankruptcy." 11 U.S.C. § 109(e); *In re Hammers*, 988 F.2d 32, 34 (5th Cir. 1993) ("The text is clear and unambiguous—an individual is an individual, and $100,000 is $100,000."). Because of this clear textual language directing a presiding court's attention to a debtor's actual amount of debt as of the *petition date*, "the general rule is that the courts determine the amount of debt as of the date of filing." *In re Thompson*, 2012 WL 5959994, at *2 (Bankr. S.D. Tex. Nov. 28, 2012). Consequently, "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *In re of Pearson*, 773 F.2d 751, 757 (6th Cir. 1985); *see also In re Scovis*, 249 F.3d 975, 982 (9th Cir. 2001); *Rodriguez v. Schmidt*, 2014 WL 37290, at *1, n. 15 (S.D. Tex. Jan. 2, 2014). To do otherwise would ignore the statutory language.

The Section 502(b)(6) limit is a limit on the allowance of claims against the Estate. Section 502(b)(6) may not be invoked until an eligible debtor files a bankruptcy petition. Accordingly, the full amount provided under state law must be used to determine eligibility.

Absent bad faith, the Court must apply the text of Section 109(e) and compute a debtor's eligibility for bankruptcy using the information filed with the debtor's petition on the *petition date*, not after a hearing on a potential reduction of the claim. *In re Pearson*, 773 F.2d at 757; *In re Mohr*, 425 B.R. 457, 464–65 (Bankr. S.D. Ohio), *aff'd sub nom. U.S. Tr. v. Mohr*, 436 B.R. 504 (S.D. Ohio 2010) ("There is no clear place to schedule the § 502(b)(6) cap in Official Bankruptcy Form 6 nor would capping the debt be appropriate; creditors and other parties-in-interest would be left without an accurate calculation of the full accelerated lease debt as it was owed under the terms of the agreement."); *see also In re Hammers*, 988 F.2d at 34 n.5 (stating

that the Fifth Circuit was not "aware of any" cases liberally construing Section 109(e) in favor of a debtor's chapter 13 eligibility).

In this case, the Court finds no evidence that the Gambles' schedules were presented in bad faith. Consequently, the Court looks to the Gambles' schedules when calculating their amount of unsecured, noncontingent, liquidated debt.

The Court is unpersuaded that Section 502(b)(6) should be considered when analyzing a debtor's Section 109(e) eligibility. Section 502(b)(6) requires that a condition precedent—a party in interest objecting to the creditor's claim—be met before the allowed amount of a claim may be determined by the Court. 11 U.S.C. § 502(b) ("[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . ."); *In re Mohr*, 425 B.R. at 464; *see also In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr. N.D. Tex. 2002) ("[T]he postpetition occurrence of a condition precedent to the debtor's liability on a debt should not be considered for purposes of determining chapter 13 eligibility."). By its nature, this condition precedent cannot be satisfied prepetition because it is "only activated by optional and unpredictable post-petition bankruptcy events." *In re Mohr*, 425 B.R. at 464.

Additionally, "absolute certainty is not and cannot be expected" when determining a debtor's amount of unsecured debt as of the date the debtor's bankruptcy petition was filed. *In re Pearson*, 773 F.2d at 757. Such a principle is plain from Section 109(e)'s requirement that a debtor's unsecured debts be less than the statutory limit and that the determination of the amount of debt be made on the petition date. *Id.*; *see also* 11 U.S.C. § 109(e). Requiring a court to wade through a complex initial determination of a debtor's eligibility could dominate the chapter 13 proceedings and "delay them unduly." *In re Pearson*, 773 F.2d at 757. Such delay would then defeat the purpose of Section 109(e)'s clear textual language to limit access to

chapter 13 relief and quickly progress through bankruptcy cases. *Id.* The Court may ordinarily rely on a debtor's schedules in determining a debtor's eligibility for chapter 13 instead of examining every possible outcome or argument, including whether Section 502(b)(6) will apply in a bankruptcy case.

The Gambles cite to various cases in support of the proposition that Bankruptcy Code provisions outside of Section 109(e) may be used to determine a debtor's eligibility to file for bankruptcy. First, the Gambles rely on federal circuit court cases that applied 11 U.S.C. § 506(a) to determine the amount of an undersecured claim for the purposes of Section 109(e). *See In re Scovis*, 249 F.3d 975, 983 (9th Cir. 2001); *In re Balbus*, 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. U.S. Through Farmers Home Admin.*, 907 F.2d 80, 82 (8th Cir. 1990); *In re Day*, 747 F.2d 405, 407 (7th Cir. 1984).

Second, the Gambles cite to cases finding that debts unenforceable under 11 U.S.C. § 502(b) are not included in the determination of Section 109(e) eligibility. *See In re Free*, 542 B.R. 492, 501 (B.A.P. 9th Cir. 2015); *Cavaliere v. Sapir*, 208 B.R. 784, 787 (D. Conn. 1997). Ultimately, the Gambles argue that, based on this precedent, the Court should make the leap in logic and apply Section 502(b)(6) to their unsecured debt and consequently find them eligible for chapter 13 relief under Section 109(e).

However, the cases cited by the Gambles are wholly inapplicable to the issue in this case. *In re Scovis*, *In re Balbus*, *Miller*, and *In re Day* each dealt with the issue of how to characterize specific debts for purposes of determining the debtor's noncontingent, liquidated, secured and unsecured debts under Section 109(e). 249 F.3d at 983; 933 F.2d at 247; 907 F.2d at 82; 747 F.2d at 407. The courts in these cases looked only at debts already appearing on each debtor's schedules as of the petition date in order to characterize those debts as secured or unsecured;

these cases did not require the courts to go beyond the debtors' schedules to determine the total amount of the claims against the debtors, such as by applying the costs of a hypothetical sale of property. *In re Scovis*, 249 F.3d at 983; *In re Balbus*, 933 F.2d at 247; *Miller*, 907 F.2d at 82; *In re Day*, 747 F.2d at 407. These cases do not support the Gambles' notion that the Court should apply Section 502(b)(6) to reduce their existing amount of debt instead of determining whether the debt was secured or unsecured.

In *In re Free* and *Cavaliere*, the courts faced the issue of whether claims that had been discharged in a previous chapter 7 bankruptcy case could be considered claims in new chapter 13 bankruptcy cases. 542 B.R. at 495; 208 B.R. at 786. In both cases, each debtor's liability was extinguished by discharge *before* the chapter 13 bankruptcy case was filed, preventing the previously discharged claims from being claims on the petition date. *In re Free*, 542 B.R. at 495; *Cavaliere*, 208 B.R. at 786. Accordingly, the discharged claims did not affect the debtors' chapter 13 eligibility. *In re Free*, 542 B.R. at 501; *Cavaliere*, 208 B.R. at 787.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 30, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE